UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
GSS GROUP Ltd. (a/k/a GLOBAL SECURITY )
SEALS GROUP Ltd.),                  )
                                    )
       Petitioner,              )
                                    )
   v.                              )   Civil Action No. 09-1322 (PLF)
                                    )
NATIONAL PORT AUTHORITY,            )
                                    )
       Respondent.             )
_____ )

OPINION

        Plaintiff GSS Group Ltd. ("GSS") initiated this action by filing a petition to confirm foreign arbitration awards. Respondent the National Port Authority ("NPA") now moves to dismiss that petition, arguing, among other things, that the Due Process Clause of the Fifth Amendment to the United States Constitution prevents this Court from exercising personal jurisdiction over the NPA. Having reviewed the relevant legal authorities, the parties' arguments, and the entire record in this case, the Court agrees with the NPA. It therefore will grant the respondent's motion and dismiss the plaintiff's petition.

I. BACKGROUND

        The NPA is "a public corporation registered under the laws of the Republic of Liberia." Petition to Confirm Arbitration Awards ("Pet.") ¶ 6. In June of 2005, GSS, a corporation formed under the laws of the British Virgin Islands, see id. ¶ 5, contracted with the NPA to "construct and operate a new container park at the Freeport of Monrovia, Liberia." Id.

¶ 7. According to the plaintiff's petition, and for reasons not relevant here, in August of 2005 that contract was superseded by a new agreement, which itself was amended on November 28, 2005. Id. ¶¶ 8-9. That final version of the contract between GSS and the NPA contained a clause providing that all disputes related to the "formation, validity, interpretation, performance, termination, enforcement or breach" of the contract would be referred to arbitration in London, England, where they would be resolved "in accordance with the laws of England and Wales." Id. ¶ 10.

On March 15, 2006, GSS initiated an arbitration proceeding against the NPA, claiming that the NPA had breached their agreement. Pet. ¶ 11. Although the NPA generally refused to participate in the arbitration, see id. ¶¶ 11-14, the proceedings continued in its absence, and the arbitrator ultimately issued two awards in which he concluded that the NPA had breached its contract with GSS and was liable to GSS for damages in the amount of $44,347,260. Id. ¶ 14-15. GSS initiated this action on July 16, 2009, by filing a petition for the confirmation of its arbitration awards against the NPA pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 201 *et seq.*, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *opened for signature* June 10, 1958, 21 U.S.T. 2517, *reprinted in* 9 U.S.C. § 201 (historical and statutory notes) ("the New York Convention").

## II. DISCUSSION

The NPA contends that GSS' petition should be dismissed on any one or more of the following grounds: (1) this Court cannot constitutionally exercise personal jurisdiction over the NPA because the NPA does not have the requisite "minimum contacts" with the United

States, Respondent's Motion to Dismiss and Opposition to Petition to Confirm Foreign Arbitral Awards ("Mot.") at 15-20; (2) venue is not proper in the District of Columbia, id. at 20-22; (3) the NPA's contract with GSS was not a valid, legally enforceable agreement, id. at 22-28; (4) petitioner GSS is not one of the parties to the contract, id. at 28-30; and (5) enforcement of the arbitration awards would contravene the public policy of the United States. Id. at 30-35. Because the Court finds the first of these arguments dispositive, it does not address the others. The NPA does not have sufficient contacts with the United States to permit this Court's exercise of personal jurisdiction over the respondent in this case.

*A. Standard of Review*

It is the petitioner's burden to make a *prima facie* showing that this Court has personal jurisdiction over the respondent. See First Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1378-79 (D.C. Cir. 1988). In order to meet its burden, the petitioner "must allege specific facts on which personal jurisdiction can be based; [it] cannot rely on conclusory allegations." FC Investment Group v. IFX Markets, Ltd., 479 F. Supp. 2d 30, 35 (D.D.C. 2007). Furthermore, when considering personal jurisdiction, the Court need not treat all of the petitioner's allegations as true. Instead, the Court "may [also] receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts." Id. (quoting United States v. Philip Morris Inc., 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000)); see also Brunson v. Kalil & Co., 404 F. Supp. 2d 221, 223 (D.D.C. 2005).

*B. Analysis*

Generally, in order for a court to exercise personal jurisdiction over a defendant, there must be both a constitutionally sufficient relationship between the defendant and the forum, and a statutory basis for the defendant's amenability to service of process. See Mwani v. Bin Laden, 417 F.3d 1, 8 (D.C. Cir. 2005). It is undisputed that the second requirement is met in this case. The Foreign Sovereign Immunities Act ("FSIA") authorizes the exercise of personal jurisdiction over a "foreign state," as that term is defined in 28 U.S.C. § 1603(a), so long as the court has subject matter jurisdiction over the plaintiff's claims and service has been effected in accordance with the relevant provision of the FSIA. 28 U.S.C. § 1330(b). As a corporation owned by Liberia, the NPA is encompassed by the relevant statutory definition of "foreign state." See 28 U.S.C. § 1603(a)-(b) (defining "foreign state" to include "an agency or instrumentality of a foreign state," and further defining "an agency or instrumentality of a foreign state" as "any entity . . . a majority of whose shares or other ownership interest is owned by a foreign state"). The Court therefore has subject matter jurisdiction under the FSIA, which waives the sovereign immunity of "foreign states," including their agencies and instrumentalities, with respect to, among other claims, petitions for the confirmation of arbitral awards pursuant to the New York Convention. See Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 489-91, 497 (1983); 28 U.S.C. § 1605(a)(6). GSS does not contend that it was not properly served with process. As a result, there is an adequate statutory basis for personal jurisdiction.

The question remains whether the Constitution permits the exercise of personal jurisdiction over the NPA by this Court. Where it applies, the Due Process Clause limits the authority of courts to exercise personal jurisdiction over nonresident defendants; personal

4

jurisdiction exists in a given forum only if the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 95 (D.C. Cir. 2002) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). GSS has not made any attempt to demonstrate that the NPA, as a corporate entity owned by and operating in Liberia, has such "minimum contacts" with the relevant forum — the United States — as are typically necessary to satisfy the Due Process Clause. See Petitioner's Opposition to Respondent's Motion to Dismiss ("Opp.") at 13-15. Instead, GSS argues that the NPA may not claim any due process protections because it is a foreign instrumentality. Id.

It is established that foreign sovereign nations are not among the "person[s]" afforded rights by the Fifth Amendment and so receive no due process protections. See Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d at 96. Therefore, whether a foreign state has sufficient minimum contacts with the United States to satisfy due process is immaterial, so long as there is subject matter jurisdiction and proper service under the FSIA. See Continental Transfert Technique, Ltd. v. Fed. Gov't of Nigeria, 697 F. Supp. 2d 46, 56 (D.D.C. 2010). At the same time, countless judicial opinions, including prominent rulings on personal jurisdiction issued by the Supreme Court, have assumed that due process limits the extent to which *private* foreign entities may be subject to personal jurisdiction in the courts of the United States. See, e.g., Asahi Metal Indus. Co. v. Super. Ct., 480 U.S. 102 (1987) (applying the "minimum contacts" test to determine whether a state court could, without violating the Due Process Clause, exercise personal jurisdiction over a Japanese corporation); Helicopteros Nacionales de

5

Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984) (determining that Colombian corporation was not subject to personal jurisdiction in a Texas court because it lacked sufficient minimum contacts with the forum).

The NPA, which characterizes itself — without dispute from the petitioner — as a "state-owned corporation operating exclusively in Liberia," Mot. at 1, would seem to fall somewhere between those two categories of defendants. Its status for the purposes of a Fifth Amendment analysis is not identical to that of the Liberian government. Nor is it a wholly private entity. Under Liberian law, the NPA is a legal entity distinct from the national government, able to sue and be sued in its own name. See Public Authorities Law, Ch. VI, § 54(2) (Liberia). According to affidavits submitted by the respondent and unrebutted by the petitioner, the NPA "is responsible for its own finances, and it does not receive funding allocations or subsidies from the Government of Liberia." Affidavit of Matilda Parker (attached to Mot.) ("Parker Affid.") ¶ 6. It "keeps its finances separate from the Government of Liberia or any of its agencies, and there is no commingling of funds." Id. ¶ 7. Furthermore, the NPA's "primary purposes are commercial in nature and it is operated as a standalone economic enterprise," id. ¶ 6; "[t]he [Liberian] Government is not involved in [its] day to day management and operation." Id. ¶ 8.

Such "'government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such'" for the purposes of a Fifth Amendment analysis. TMR Energy Ltd. v. State Property Fund of Ukraine, 411 F.3d 296, 301 (D.C. Cir. 2005) (quoting First Nat'l City Bank v. Banco para el Comercio Exterior de Cuba, 462 U.S. 611, 626-27 (1983)). Under certain circumstances, however, a foreign instrumentality that

claims to operate at some remove from its government may nevertheless be so closely associated with the foreign sovereign that the two are legally indistinguishable, with the result that the instrumentality, as part of a foreign government, is not a "person" entitled to due process protections.  See TMR Energy Ltd. v. State Property Fund of Ukraine, 411 F.3d at 301-02.  For unknown reasons, GSS has elected not to argue that such is the case here.  See Opp. at 14-15 (acknowledging that the "NPA is purportedly managed independently" of the Liberian government and presenting no arguments to contest that claim).

Since the NPA has presented itself as independent from its sovereign and GSS has not attempted to dispute that characterization, the rule that a foreign government has no due process rights is not applicable to the NPA.  See TMR Energy Ltd. v. State Property Fund of Ukraine, 411 F.3d at 301.  GSS contends that the NPA nevertheless lacks due process rights because "there is no [constitutional] distinction to be drawn . . . between agencies controlled by a foreign state and agencies managed independently of the foreign state."  Opp. at 13.  Although this argument seems counterintuitive, GSS purports to find support for it in *dicta* in TMR Energy Ltd. v. State Property Fund of the Ukraine.   While ruling in that case that a foreign instrumentality that functions as an agent of its sovereign has, like the sovereign itself, no due process rights, the court of appeals noted that "[i]t is far from obvious that even an independent [instrumentality] would be entitled to the protection of the [F]ifth [A]mendment."  TMR Energy Ltd. v. State Property Fund of the Ukraine, 411 F.3d at 302 n.*.  The court accompanied that statement with citations to cases in which the Supreme Court or the court of appeals had held that aliens without connections to the United States could not claim the benefit of constitutional

protections.  Id. (citing United States v. Verdugo-Urquidez, 494 U.S. 259, 271 (1990); Jifry v. FAA, 370 F.3d 1174, 1182 (D.C. Cir. 2004)).

        The court of appeals' passing comment is well taken.  It is not clear why foreign defendants, other than foreign sovereigns, should be able to avoid the jurisdiction of United States courts by invoking the Due Process Clause when it is established in other contexts that nonresident aliens without connections to the United States typically do not have rights under the United States Constitution.  Accord TMR Energy Ltd. v. State Property Fund of the Ukraine, 411 F.3d at 302 n.* ("[A]lthough courts often assume the minimum contacts test applies in suits against foreign 'persons,' that assumption appears never to have been challenged."); see also Austen L. Parrish, Sovereignty, Not Due Process: Personal Jurisdiction over Nonresident Alien Defendants, 41 WAKE FOREST L. REV. 1, 7 (2006) ("[T]he assumption that the same due process considerations apply equally to nonresident, alien defendants as to domestic defendants in the personal jurisdiction context is doctrinally inconsistent with broader notions of American constitutionalism.").  Nevertheless, while the notion that the minimum contacts test must be satisfied before a court can exercise personal jurisdiction over a foreign nonresident defendant may coexist uneasily alongside other elements of constitutional theory, the notion is enshrined in law, including, as noted, Supreme Court precedent.  This Court therefore is in no position to reject it.

        Perhaps foreseeing that result, GSS argues that foreign state-owned corporations, unlike private foreign corporations, should receive no due process protections because foreign governments themselves receive none.  Opp. at 14-15 (citing Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d at 96).  But the reasoning that led the court of appeals to conclude in

8

Price that foreign governments are not "persons" for Fifth Amendment purposes does not necessarily apply to corporations that are owned by but otherwise largely independent of a foreign sovereign.

GSS points out that the court of appeals in Price rested its conclusion at least in part on two factors that GSS argues are applicable to foreign state-owned corporations just as much as they are to foreign sovereigns. First, the fifty states of the United States are not "persons" entitled to due process rights, and "[t]herefore, absent some compelling reason to treat foreign sovereigns more favorably than 'States of the Union,' it would make no sense to view foreign states as 'persons' under the Due Process Clause." Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d at 96. In this case, that argument proves little. If its thrust is simply that no foreign entity should enjoy due process rights when those rights are not available to the states, its logic is defeated by the fact that United States courts, including the Supreme Court, have long afforded private foreign defendants the benefit of the rule that personal jurisdiction exists only over those defendants who have sufficient minimum contacts with the judicial forum. If, on the other hand, foreign sovereign nations are compared to the fifty states because the states are sovereign — if, in other words, the relevant point of comparison is sovereign status, rather than nationality — then the comparison seems to have no implications for a foreign corporation operating independently of its government.

Second, GSS' cause is not aided by the court of appeals' observation that a foreign nation is "entirely alien to our constitutional system" and so should not enjoy any due process rights. Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d at 96. Again, the meaning of this statement cannot simply be that any foreign entity is "alien to our constitutional

9

system" and so not a Fifth Amendment "person." That conclusion would seem to be foreclosed by abundant judicial precedents applying the minimum contacts test in cases involving private foreign defendants. Perhaps the doctrinal logic of those precedents is faulty — but if it is, it is not for this Court to correct that logic.

Finally and most importantly, some of the most significant factors driving the court of appeals' decision in Price simply are not present here. Foreign states occupy a unique position in relation to the United States. "Relations between nations in the international community are seldom governed by the domestic law of one state or the other. And legal disputes between the United States and foreign governments are not mediated through the Constitution." Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d at 97 (citation omitted). Instead, the political branches of the United States engage foreign nations "on the level of international law and diplomacy." Id. (quoting Lori Fisler Damrosch, Foreign States and the Constitution, 73 VA. L. REV. 483, 521 (1987)) (internal quotation marks omitted).

None of these considerations would seem relevant in a discussion of a commercial corporation owned by but independent of a foreign state. Such a corporation, unlike a foreign sovereign, is not the "juridical equal[]" of the United States. Damrosch, supra, at 521 (quoted in Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d at 97 (internal quotation marks omitted)). It presumably has no diplomatic presence or political authority with which to engage the United States and defend its rights and interests when they may be affected by a judicial proceeding in a United States court. Of course, it is entirely possible that if the NPA were not so independent from the Liberian government as it claims to be — if the Liberian government exerted great influence on the NPA's behalf, for example, or regarded the fortunes of the NPA as

10

coextensive with its own — the NPA might function more like a sovereign than an independent corporation. But again, GSS has made no attempt to demonstrate that any such state of affairs exists.

Because the NPA does not possess the characteristics of a sovereign nation that the court of appeals found relevant in Price, it functions more like a private corporation than a foreign government for the purposes of a Fifth Amendment analysis. It therefore may not be haled into an American court without having a sufficient quantum of minimum contacts with the United States. See Asahi Metal Indus. Co. v. Super. Ct., 480 U.S. 102 (1987) (concluding that a Japanese corporation was not subject to the jurisdiction of a California court because it lacked sufficient contacts with the forum state); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (in general, a defendant's "conduct and connection with the forum State" must be such "that he should reasonably anticipate being haled into court there"). Because the petitioner has not demonstrated, or even attempted to demonstrate, that the respondent has *any* contacts with the United States, the Court lacks jurisdiction over the person of the respondent, and the petition for confirmation of the arbitration awards will be dismissed.

III. CONCLUSION

For the foregoing reasons, the Court will grant the NPA's motion to dismiss GSS' petition. An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Court

DATE: March 30, 2011